IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS<br><br>and<br><br>JOSEPH R. CAPEN,<br><br>         Plaintiffs,<br><br>       v.<br><br>CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,<br><br>and<br><br>MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts,<br><br>         Defendants. | CIVIL ACTION<br><br>No. _____ |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs submit the following Complaint against Defendants.

### **I. PARTIES**

1. Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the Commonwealth of Massachusetts (the "State"). NAGR represents the interests of its members who reside in the State. Specifically, NAGR represents the interests of those who are affected by State's prohibition of commonly used firearms and magazines. NAGR represents the interests of its members who intend to and, but for the

1

credible threat of prosecution under the Challenged Laws (as defined below), would purchase the Banned Firearms (as defined below) and Banned Magazines (as defined below) to keep in their homes for self- defense and other lawful purposes. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

2. Plaintiffs Joseph R. Capen is a resident of the State and is a law-abiding citizen of the United States. He is otherwise eligible under the laws of the United States and the State to receive and possess firearms and magazines, including the Banned Firearms and Banned Magazines. Plaintiff intends to and, but for the credible threat of prosecution under the Challenged Laws, would purchase the Banned Firearms and Banned Magazines to keep in his home for self- defense and other lawful purposes.

3. Defendant Charles D. Baker, Jr., is the Governor of the Commonwealth of Massachusetts. As Governor, Defendant Baker serves as the "supreme executive magistrate" of the government of Massachusetts and is ultimately responsible for the enforcement of the laws of Massachusetts including the Challenged Laws. MASS. CONST. ch. II, § 1.

4. Defendant Maura Healey is the Attorney General of the Commonwealth of Massachusetts. As Attorney General, Defendant Healey is the executive and administrative officer in charge of supervising the Office of the Attorney General and is the chief lawyer and law enforcement officer in Massachusetts with authority to prosecute violators of the law, including the Challenged Laws, on behalf of Massachusetts. See MASS. GEN. LAWS ch. 12, § 3.

5. Defendants are or will enforce the unconstitutional laws challenged in this action against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

6.      The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States.  The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

7.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## IV.  GENERAL ALLEGATIONS

9.      The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

10.     The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra*.

11.     This action challenges the constitutionality of certain provisions of MASS. GEN. LAWS ch. 140, §§ 121 and 131M (the "Challenged Laws").

12.     MASS. GEN. LAWS ch. 140, § 121 defines the term "assault weapon."

3

13. The term "assault weapon" as used in the Challenged Laws is not a technical term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes. Plaintiffs refuse to adopt the State's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault weapon" in MASS. GEN. LAWS ch. 140, § 121.

14. MASS. GEN. LAWS ch. 140, § 131M states in relevant part:

> No person shall sell, offer for sale, transfer or possess an assault weapon or a large capacity feeding device that was not otherwise lawfully possessed on September 13, 1994. Whoever not being licensed under the provisions of section 122 violates the provisions of this section shall be punished, for a first offense, by a fine of not less than $1,000 nor more than $10,000 or by imprisonment for not less than one year nor more than ten years, or by both such fine and imprisonment, and for a second offense, by a fine of not less than $5,000 nor more than $15,000 or by imprisonment for not less than five years nor more than 15 years, or by both such fine and imprisonment.

15. Thus, under the Challenged Laws, no person in the State may acquire, use, possess bear or transfer Banned Firearms

16. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller, supra*, at 627.

17. There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those banned by the Challenged Laws. The Supreme Court has held as much. In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions." *Id.*, 511 U.S. 611-12 (identifying the AR-15 – the archetypal "assault weapon" –

4

as a traditionally lawful firearm). The vast majority of States do not ban they type of semiautomatic rifles deemed "assault weapons" in the Challenged Laws.

18. Millions of law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020) [1] ("Commonality is determined largely by statistics."); *Ass'n of N.J Rifle & Pistol Clubs, Inc. v. Att'.Y Gen.*, 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' "). This is demonstrated by the AR-15 and other modem semiautomatic rifles, which epitomize the firearms that State bans.

19. The AR-15, as just one example among many of a Banned Firearm, is America's "most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Already in early 2013, sources estimated that there were five million AR-15s in private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar.

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

5

9, 2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).[2]

20. Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms currently possessed by Plaintiffs. The Challenged Laws's prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by Plaintiffs and/or their members violates the Second Amendment.

21. MASS. GEN. LAWS ch. 140, § 121 defines the term "large-capacity feeding device" to mean any firearm magazine capable of holding more than ten rounds of ammunition.

22. The Challenged Laws again uses politically charged rhetoric to describe the arms it bans. The Challenged Laws's characterization of these magazines as "large capacity" is a misnomer. Magazines capable of holding more than 10 rounds are standard capacity magazines. Plaintiffs refuse to adopt the State's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-capacity feeding device" in MASS. GEN. LAWS ch. 140, § 121.

23. As set forth in detail above, MASS. GEN. LAWS ch. 140, § 131M makes it illegal sell, offer for sale, transfer or possess any Banned Magazine.

24. Magazines are indisputably "arms" protected by the Second Amendment, as the right to keep and bear arms necessarily includes the right to keep and bear components such as ammunition and magazines that are necessary for the firearm to operate. *See United States v. Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that

---

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and on *reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

"[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

25. The magazines the State has banned unquestionably satisfy the "common use" test. *Duncan III,*, 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

26. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen, supra*, Judge Traxler (whose dissenting opinion almost certainly accurately states the law post *Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States.  These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds.  Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

27. Magazines capable of holding more than 10 rounds of ammunition are commonly owned by millions and millions of Americans for all manner of lawful purposes, including self-defense, sporting, and hunting. They come standard with many of the most popular handguns and long guns on the market, and Americans own roughly 115 million of them, *Duncan IV*, 970 F.3d at 1142, accounting for "approximately half of all privately owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022).  Indeed, the most popular handgun in America, the Glock 17 pistol, comes standard with a 17-round magazine. *See Duncan III*, 366 F.Supp.3d at 1145.

28. There can be no serious dispute that magazines capable of holding more than 10 rounds are bearable arms that satisfy the common use test and thus are presumptively protected by the Second Amendment.  Law-abiding citizens own over 100 million magazines such as the

Banned Magazines. The Challenged Laws's prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

29. The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines. It therefore falls to the Defendant to justify its regulation as consistent with historical tradition rooted in the Founding. This it cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

30. In the post-*Bruen* decision of *Rocky Mountain Gun Owners v. The Town of Superior*, Case No. 22-cv-1685 (July 22, 2022), the court entered an order in which it restrained enforcement of certain provisions of a Town of Superior, Colorado ordinance that banned semiautomatic weapons and magazine with a capacity greater than ten rounds. The court held there was a strong likelihood that the plaintiffs in that case would prevail on the merits of their constitutional challenge to the ordinance provisions. The restrained ordinance is substantially identical to the ordinance provisions challenged in this action.

31. There is an actual and present controversy between the parties. The Challenged Laws infringes on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes. Defendant denies these contentions. Plaintiffs desire a judicial declaration that the Challenged Laws sections identified above, facially and/or as applied to them, violate their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. This is true even if certain provisions of the Challenged Laws provide affirmative defenses to criminal prosecution. The risk of

criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

32. Plaintiffs are or will be injured by Defendant's enforcement of the Challenged Laws sections identified above insofar as those provisions violate Plaintiffs' rights under the Second Amendment by precluding the acquisition, possession, transfer and use of arms that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. If not enjoined by this Court, Defendant will enforce the Challenged Laws in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

## V. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

33. Paragraphs 1 through 32 are realleged and incorporated by reference.

34. The Challenged Laws bans firearms and firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide. The Challenged Laws, therefore, generally prohibits residents of the State, including Plaintiffs, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment. There are significant penalties for violations of the Challenged Laws.

35. These restrictions infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

36. The Challenged Laws' prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

37. Defendants cannot satisfy their burden of justifying these restrictions on the Second Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## VI. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

38. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Challenged Laws sections identified herein are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

39. Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Code sections identified above;

40. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

41. Grant any such other and further relief as the Court may deem proper.

Respectfully submitted this 7th day of September 2022.

_/s/ Andrew J. Couture_____
Andrew J. Couture
77 Merriam Ave
Leominster MA 01453
(978) 502-0221
attycouture@gmail.com

Barry K. Arrington*
Arrington Law Firm

3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
(303) 205-7870
barry@arringtonpc.com
*Admission Pro Hoc Vice Pending*

Sebastian D. Torres
Lewis Brisbois Bisgaard & Smith LLP
250 East Fifth Street, Suite 2000
Cincinnati, Ohio 45202
(513) 808-9911
Sebastian.Torres@lewisbrisbois.com
*Admission Pro Hoc Vice Pending*

*Attorneys for Plaintiffs*

11