Exhibit 1

Rebuttal of Spitzer Exhibit H

**State 1: Arizona 1889**

**Statute**: 1889 Ariz. Sess. Laws 16, An Act Defining And Punishing Certain Offenses Against The Public Peace, § 1.

The citation for this statute is incorrect, it should be 1889 Ariz. Sess. Laws 13, § 1.

In *New York State Rifle & Pistol Ass n, Inc. v. Bruen*, 142 S. Ct. 2111, 2154 (2022), the Court specifically ruled that this statute is irrelevant to the statutory inquiry. It is not relevant to this case for four reasons:

Time: "[R]espondents' reliance on late-19th-century laws has several serious flaws even beyond their temporal distance from the founding." *Id*., 142 S. Ct. 2154.

Pistol only: The statute applied to pistols only, not the long guns implicated in this case. *Id*.

Localized: "[T]he bare existence of these localized restrictions cannot overcome the overwhelming evidence" of contrary tradition. *Id*.

Territorial: "[W]e will not stake our interpretation on a handful of temporary territorial laws that were enacted nearly a century after the Second Amendment's adoption …" *Id*., 142 S.Ct. at 2155.

**State 2: Arkansas 1881**

**Statute**: 1881 Ark. Acts 191, An Act to Preserve the Public Peace and Prevent Crime, chap. XCVI (96), § 1-2.

Unfortunately, Spitzer flat out misrepresents this law when he states that it "banned the possession of Bowie knives outright." Spitzer Dec. ¶ 69. In his exhibit he deleted a key portion

1

of the statute. When that portion is added back in, the statute expressly states the exact opposite of what Spitzer represented.

In *McDonald v. State*, 102 S.W. 703 (Ark. 1907), the Arkansas Supreme Court quoted the statute in ful. The Court stated:

> This indictment was based upon section 1 of the act entitled 'An act to preserve the public peace and prevent crime,' approved April 1, 1881 (Laws 1881, p. 191), which is as follows:
>
> 'Any person who shall wear or carry in any manner whatever as a weapon, any dirk, or bowie knife, or a sword, or a spear in a cane, brass or metal knucks, razor, or any pistol of any kind whatever, except such pistols as are used in the army or navy of the United States, shall be guilty of a misdemeanor. Provided, officers whose duties require them to make arrests or to keep and guard prisoners, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties are exempted from the provisions of this act. **Provided, further, nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his own premises**.'
>
> Section 2 (page 192) of the same act is as follows: 'Any person, **excepting such officers, or persons on a journey, and on his premises**, as are mentioned in section one of this act, who shall wear or carry any such pistol as is used in the army or navy of the United States, in any manner, except uncovered and in his hand, shall be deemed guilty of a misdemeanor.'

*Id*., 102 S.W. at 703 (emphasis added).

Far from banning possession as Spitzer says, the Arkansas law expressly permits it. Spitzer took this part out of the statute when he quoted it. The omitted part states that nothing in its provisions shall be "construed as to prohibit any person from carrying any weapon when … upon his own premises."

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

2

The law is not "relevantly similar" to the challenged laws, *Bruen*, 142 S. Ct. at 2133. This law regulates carry only. It does not ban any weapon, much less a weapon in common use. Courts in this era distinguished between carry and possession. The former was subject to strict regulation; the latter was not. *Andrews v. State*, 50 Tenn. 165, 185-86 (1871).

**State 3: Colorado 1881**

**Statute**: Colo. Rev. Stat 1774, Carrying Concealed Weapons—Penalty—Search Without Warrant—Jurisdiction of Justice, § 248. (1881)

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. This law prohibited concealed carry of arms but did not regulate open carry. The law at issue does not regulate carry at all but instead forbids ordinary Americans from acquiring the banned arms.

**State 4: Hawaii 1852, 1913**

**Statute 1**: 1852 Haw. Sess. Laws 19, Act to Prevent the Carrying of Deadly Weapons Dangerous or Unusual Weapons | Hawaii | 1852

This citation is truly bizarre. If a territorial law has no value in the analysis, *Bruen*, 142 S.Ct. at 2155, how much less does a law from the **Kingdom of Hawaii**. "After the Kingdom formally established itself, in 1840, it persisted for over half a century as a constitutional monarchy independent amongst the world's nations." Ryan William Nohea Garcia, *Who Is Hawaiian, What Begets Federal Recognition, and How Much Blood Matters*, 11 Asian-Pac. L. & Pol'y J. 85, 111 (2010).

**Statute 2**: 1913 Haw. Rev. Laws ch. 209, § 3089, Carrying Deadly Weapons

Dangerous or Unusual Weapons | Hawaii | 1913

This 1913 law comes much too late to provide any insight into the meaning of the Second Amendment. In *Bruen*, the Supreme Court entirely disregarded laws from the 20th century. *Id*, 142 S. Ct. at 2154 n.28. Also, territorial laws do not support the City's case, because they "were rarely subject to judicial scrutiny" and applied only to "miniscule territorial populations" but would have been "irrelevant to more than 99% of the American population." *Bruen*, 142 S. Ct. at 2154–55.

**State 5: Idaho 1879**

**Statute**: Charter and Revised Ordinances of Boise City, Idaho. In Effect April 12, 1894 Page 118-119, Image 119-120 (1894) available at The Making of Modern Law: Primary Sources. Carrying Weapons | Idaho | 1879 Carrying Concealed Weapons, § 36.

This law applied to Boise City, Idaho only. The town had a population in 1880 of 1,899. Poplulation.US., available at https://population.us/id/boise-city/ (last visited Feb. 11, 2023).This highly localized restriction was a uniquely severe restriction on Second Amendment rights of the sort that the Supreme Court in *Bruen* dismissed as "territorial legislative improvisations" which were not "instructive" and did not "reflect the origins and continuing significance of the Second Amendment." *Bruen*, 142 S. Ct. at 2154.

This law also comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The law prohibited concealed carry of arms but did not regulate open carry. The law at issue does not regulate carry at all but instead forbids ordinary Americans from acquiring the banned arms. Though Spitzer does not refer to it in his table, there was an 1889 Idaho territorial law that restricted carry. 1889 Idaho Terr. Gen. Laws § 1, p. 23. But in *Bruen*, the Court ruled this law out of bounds with respect to the historical inquiry. *Id.*, 142 S.Ct. at 2154.

**State 6: Indiana 1859**

**Statute**: 1859 Ind. Acts 129, An Act to Prevent Carrying Concealed or Dangerous Weapons, and to Provide Punishment Therefor.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. It prohibits carrying concealed and carrying with the "intent or avowed purpose of injuring" another.

**State 7: Louisiana 1870**

**Statute**: 1870 La. Acts 159–60, An Act to Regulate the Conduct and to Maintain the Freedom of Party Election . . . , § 73. Subject(s): Sensitive Places and Times

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The law regulated carry of arms only in certain designated places and even then only once every two years (i.e., during election and registration). But the City's law outright bans possession of certain arms in common use.

**State 8: Missouri 1917, 1923**

**Statute 1**: Joplin Code of 1917, Art. 67, § 1201. Missouri. Weapons; Deadly

This law applied to Joplin, Missouri only. The town had a population in 1920 of 29,902. Poplulation.US., available at https://population.us/mo/joplin/ (last visited Feb. 11, 2023).This highly localized restriction was a uniquely severe restriction on Second Amendment rights of the sort that the Supreme Court in *Bruen* dismissed as "territorial legislative improvisations" which were not "instructive" and did not "reflect the origins and continuing significance of the Second Amendment." *Bruen*, 142 S. Ct. at 2154.

This 1917 law comes much too late to provide any insight into the meaning of the Second Amendment. In *Bruen*, the Supreme Court entirely disregarded laws from the 20th century. *Id*, 142 S. Ct. at 2154 n.28.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The law regulated carry of arms only in certain designated places and even then only once every two years (i.e., during election and registration). But the City's law outright bans possession of certain arms in common use. The law only targeted illegal conduct with a weapon but did not ban possession like the City's law.

**Statute 2**: 1923 Mo. Laws 241-42, An Act to Provide the Exercise of the Police Powers of the State by and through Prohibiting the Manufacture, Possession, Transportation, Sale and Disposition of Intoxicating Liquors. . .§ 17. Sensitive Places and Times | Missouri | 1923

This 1923 law comes much too late to provide any insight into the meaning of the Second Amendment. In *Bruen*, the Supreme Court entirely disregarded laws from the 20th century. *Id*, 142 S. Ct. at 2154 n.28.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The law forbids only the carrying of arms while in a vehicle of any type that was carrying liquor,

which was at the time illegal in Missouri. This law therefore banned illegal conduct with arms, but it did not bar their possession, like the challenged law.

**State 9: Nebraska 1872**

Statute: Gilbert B. Colfield, Laws, Ordinances and Rules of Nebraska City, Otoe County, Nebraska Page 36, Image 36 (1872) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Nebraska | 1872
Ordinance No. 7, An Ordinance Prohibiting the Carrying of Fire Arms and Concealed Weapons, § 1.

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

A territorial law has no value in the analysis. *Bruen*, 142 S.Ct. at 2155. It follows that a law from a single city in a new state has no value. This local regulation did not even apply statewide. It would have been "irrelevant to more than 99% of the American population." *Bruen*, 142 S. Ct. at 2154–55. It therefore cannot shed any light on the scope of the Second Amendment.

This law applied to Nebraska City, Nebraska only. The town had a population of 6,050 people. David Drozd, Jerry Deichert Nebraska Historical Populations, available at bit.ly/3E01x2Q (last visited Feb. 11, 2023). This highly localized restriction was a uniquely severe restriction on Second Amendment rights of the sort that the Supreme Court in *Bruen* dismissed as "territorial legislative improvisations" which were not "instructive" and did not "reflect the origins and continuing significance of the Second Amendment." *Bruen*, 142 S. Ct. at 2154. Indeed, under the principles articulated in *Bruen*, the law was blatantly unconstitutional and has zero relevance to this case.

**State 10: New York 1885**

**Statute**: George R. Donnan, Annotated Code of Criminal Procedure and Penal Code of the State of New York as Amended 1882-5 Page 172, Image 699 (1885) available at The Making of Modern Law: Primary Sources. Carrying, Using, Etc., Certain Weapons, § 410

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. This law prohibits a person from carrying or possessing an arm "**with the intent to [] use**" the arm against another. Thus, the law banned illegal conduct with arms only. It did not bar their possession, like the City's law.

**State 11: Oklahoma 1890, 1891**

Statute 1: 1890 Okla. Laws 495, art. 47
Brandishing, Carrying Weapons, Hunting, Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible | Oklahoma | 1890

*Bruen* specifically considered this statute and held that it was irrelevant to the Second Amendment inquiry. *Id*. 142 S. Ct. at 2154.

The law is a "territorial legislative improvisation[], which conflict[s] with the Nation's earlier approach to firearm regulation, [and was therefore] most unlikely to reflect the origins and continuing significance of the Second Amendment and [the Court did] not consider them instructive." *Id*. (quotations omitted). Territorial laws like this one "were rarely subject to judicial scrutiny" and applied only to "miniscule territorial populations" but would have been "irrelevant to more than 99% of the American population." *Id*., 142 S. Ct. at 2154–55.

This law has even less relevance in this case, because it is not even "relevantly similar" to the challenged law. *Bruen* concerned public carry of arms, the same topic as this law. But the City's law outright bans possession of certain arms in common use, not merely carry.

Statute 2: Leander G. Pitman, The Statutes of Oklahoma, 1890. (From the Laws Passed by the First Legislative Assembly of the Territory) Page 495-496, Image 511-512 (1891) available at The Making of Modern Law: Primary Sources.
Carrying Weapons | Oklahoma | 1891
Concealed Weapons, §§ 1, 2, 4-10.

This law is practically identical to the law specifically rejected in *Bruen* (see Statute 1 above) and is therefore irrelevant for the same reason.

**State 12: Tennessee 1869, 1881, 1893**

Statute 1: James H. Shankland Public Statutes of the State of Tennessee, since the Year 1858. Being in the Nature of a Supplement to the Code Page 108, Image 203 (Nashville, 1871) available at The Making of Modern Law: Primary Sources. 1869 Elections.

This law applied to Nashville only. The city had a population in 1870 of 25,865. Population.US, available at https://population.us/tn/nashville/ (last visited Feb. 11, 2023). This highly localized restriction was a uniquely severe restriction on Second Amendment rights of the sort that the Supreme Court in *Bruen* dismissed as "territorial legislative improvisations" which were not "instructive" and did not "reflect the origins and continuing significance of the Second Amendment." *Bruen*, 142 S. Ct. at 2154.

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

9

This law is not "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The law regulates carry of arms in certain sensitive places only. It is not an outright ban of possession like the City's law.

Statute 2: William King McAlister Jr., Ordinances of the City of Nashville, to Which are Prefixed the State Laws Chartering and Relating to the City, with an Appendix Page 340-341, Image 345-346 (1881) available at The Making of Modern Law:
Primary Sources.
Ordinances of the City of Nashville, Carrying Pistols, Bowie-Knives, Etc.,

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

A territorial law has no value in the analysis. *Bruen*, 142 S.Ct. at 2155. It follows that a law from a single city has no value. This local regulation did not even apply statewide. It would have been "irrelevant to more than 99% of the American population." *Bruen*, 142 S. Ct. at 2154–55. It therefore cannot shed any light on the scope of the Second Amendment.

This law forbidding carry but not possession highlights why Spitzer is wrong to equate the two in paragraph 69 of his declaration (equating ban on carry in 15 states with ban on possession in those states).

In *Andrews v. State*, 50 Tenn. 165 (1871), the Tennessee Supreme Court rejected this very distinction in a case dealing with a law regulating arms, including Bowie knives:

> So we may say, with reference to such arms, as we have held, he may keep and use in the ordinary mode known to the country, no law can punish him for so doing, while he uses such arms at home or on his own premises; he may do with his own as he will, while doing no wrong to others. Yet, when he carries his property abroad, goes among the people in public assemblages where others are to be affected by his conduct, then he brings himself within the pale of public regulation, and must submit to such restriction on the mode of using or carrying

>his property as the people through their Legislature, shall see fit to impose for the general good.

*Id*. 50 Tenn. at 185–86.

Thus, the construction Spitzer gives this law (i.e., that a prohibition on carry is the same as a prohibition on possession) is completely foreclosed. Thus, when the Nashville ordinance was passed ten years after *Andrews*, no one thought that it forbade possession of common arms, such as the prohibition in Highland Park's ordinance.

Statute 3: Claude Waller, Digest of the Ordinances of the City of Nashville, to Which are Prefixed the State Laws Incorporating, and Relating to, the City, with an Appendix Containing Various Grants and Franchises Page 364-365, Image 372-373 (1893) available at The Making of Modern Law: Primary Sources.
Ordinances of the City of Nashville, § 738.

This ordinance is practically identical to the 1881 ordinance and is irrelevant for the same reason.

**State 13: Texas 1871**

**Statute**: 1871 Tex. Laws 25, An Act to Regulate the Keeping and Bearing of Deadly Weapons.

In *Bruen*, the Court specifically rejected this statute as a source of Second Amendment history and tradition as an "outlier." *Id*., 142 S.Ct. at 2153

This law is also not even "relevantly similar" to the challenged law. *Bruen*, 142 S. Ct. at 2133. Once again, a state has specifically distinguished between carry and possession. This law regulated carry only, and it specifically stated: "**this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business**." The City's law prohibits both of these things.

**State 14: Utah 1877**

**Statute**: Chapter 5: Offenses Against the Person, undated, reprinted in The Revised Ordinances Of Provo City, Containing All The Ordinances In Force 105, 106-7 (1877) (Provo, Utah).

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

A territorial law has no value in the analysis. *Bruen*, 142 S.Ct. at 2155. It follows that a law from a single city has no value. This local regulation did not even apply statewide. It would have been "irrelevant to more than 99% of the American population." *Bruen*, 142 S. Ct. at 2154–55. It therefore cannot shed any light on the scope of the Second Amendment.

This law applied to Provo, Utah only. The town had a population of 3,432 in 1880. U.S. Census Bureau, available at bit.ly/3K4thHt (last visited Feb. 11, 2023). This highly localized restriction was a uniquely severe restriction on Second Amendment rights of the sort that the Supreme Court in *Bruen* dismissed as "territorial legislative improvisations" which were not "instructive" and did not "reflect the origins and continuing significance of the Second Amendment." *Bruen*, 142 S. Ct. at 2154. Indeed, under the principles articulated in *Bruen*, the law was blatantly unconstitutional and has zero relevance to this case.

**State 15: West Virginia 1882, 1891, 1925**

**Statute 1**: 1882 W. Va. Acts 421–22 Carrying Weapons | West Virginia | 1882

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

This law is irrelevant because in *Bruen*, the Supreme Court discussed the West Virginia Supreme Court's view that handguns were categorically unprotected by the Second Amendment, "a rationale endorsed by no other court during this period." Id., 142 S. Ct. at 2153. As such, the views of the state at this time are an outlier and should be accorded no weight in determining the scope of the Second Amendment.

The law is also not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. The law permits possession of these arms for self defense. The Highland Park law at issue prevents all ordinary Americans from possessing the banned arms under any circumstances.

**Statute 2**: 1891 W. Va. Code 915, Of Offences Against the Peace, ch. 148, § 7. Carrying Weapons | West Virginia | 1891

This is practically identical to the 1882 law and is irrelevant for the same reason.

Statute 3: 1925 W.Va. Acts 25-30, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms. . . , ch. 3, § 7, pt. a. Carrying Weapons, Possession by, Use of, and Sales to Minors and Others Deemed Irresponsible, Registration and Taxation | West Virginia | 1925

This 1925 law comes much too late to provide any insight into the meaning of the Second Amendment. In *Bruen*, the Supreme Court entirely disregarded laws from the 20th century. *Id*, 142 S. Ct. at 2154 n.28.

This law is also not "relevantly similar" to the challenged laws, *Bruen*, 142 S. Ct. at 2133. It is a licensing law. The law prohibited unlicensed carry of arms but did not prohibit licensed carry. The Highland Park law at issue does not regulate carry at all but instead forbids ordinary Americans from possessing the banned arms under any circumstances.