IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS<br><br>and<br><br>JOSEPH R. CAPEN,<br><br>     Plaintiffs,<br><br>     v.<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts,<br><br>     Defendant. | CIVIL ACTION No. 22-cv-11431-FDS |

## FIRST AMENDED COMPLAINT

Pursuant to the Court's August 5, 2025 Order, Plaintiffs submit the following First Amended Complaint against Defendant.

### I.  PARTIES

1. Plaintiff National Association for Gun Rights ("NAGR") is a Virginia nonprofit corporation with an address of P.O. Box 1776, Loveland, Colorado 80539.

2. Plaintiff Joseph R. Capen is an individual and a resident of the Commonwealth of Massachusetts.

3. Defendant Andrea Joy Campbell is the Attorney General of the Commonwealth of Massachusetts.  As Attorney General, Defendant Campbell is the executive and administrative officer in charge of supervising the Office of the Attorney General and is the chief lawyer and law enforcement officer in

Massachusetts with authority to prosecute violators of the law, including the Challenged Laws, on behalf of Massachusetts. See Mass. Gen. Laws ch. 12, § 3.

4. Defendant is or will enforce the unconstitutional laws challenged in this action against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

5. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV. GENERAL ALLEGATIONS

**A. The Challenged Statute**

7. This action challenges the constitutionality of MASS. GEN. LAWS ch. 140, § 131M(a) (the "Statute"). The Statute states: "No person shall possess, own, offer for sale, sell or otherwise transfer in the commonwealth or import into the commonwealth an assault-style firearm, or a large capacity feeding device."

8. The penalty for violating Section 131M is a fine of up to $10,000 and/or imprisonment of up to ten years. MASS. GEN. LAWS ch. 140, § 131M(d).

9. "Assault-style firearm" is defined as:

(a) a semiautomatic, centerfire rifle with the capacity to accept a detachable feeding device and includes at least 2 of the following features: (i) a folding or telescopic stock; (ii) a thumbhole stock or pistol grip; (iii) a forward grip or second handgrip or protruding grip that can be held by the non-trigger hand; (iv) a threaded barrel designed to accommodate a flash suppressor or muzzle break or similar feature; or (v) a shroud that encircles either all or part of the barrel designed to shield the bearer's hand from heat, excluding a slide that encloses the barrel.

(b) a semiautomatic pistol with the capacity to accept a detachable feeding device and includes at least 2 of the following features: (i) the capacity to accept a feeding device that attaches to the pistol outside of the pistol grip; (ii) a second handgrip or a protruding grip that can be held by the non-trigger hand; (iii) a threaded barrel capable of accepting a flash suppressor, forward handgrip or silencer; or (iv) a shroud that encircles either all or part of the barrel designed to shield the bearer's hand from heat, excluding a slide that encloses the barrel.

(c) a semiautomatic shotgun that includes at least 2 of the following features: (i) a folding or telescopic stock; (ii) a thumbhole stock or pistol grip; (iii) a protruding grip for the non-trigger hand; or (iv) the capacity to accept a detachable feeding device.

(d) Any firearm listed on the assault-style firearm roster pursuant to section 131 ¾.

(e) Any of the following firearms, or copies or duplicates of these firearms, of any caliber, identified as: (i) Avtomat Kalashnikov, or AK, all models; (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta AR70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M- 11/9 and M-12; (vii) Steyr AUG; (viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (ix) revolving cylinder shotguns including, but not limited to, the Street Sweeper and Striker 12;

(f) a copy or duplicate of any firearm meeting the standards of or enumerated in clauses (d) and (e); provided, that for the purposes of this subsection, "copy or duplicate" shall mean a firearm: (A) that was manufactured or subsequently configured with an ability to accept a detachable magazine; and (B)(i) that has internal functional components that are substantially similar in construction and configuration to those of an enumerated firearm in clauses (d) and (e); or (ii) that has a receiver that is the same as or interchangeable with the receiver of an enumerated firearm in said clauses (d) and (e); provided further, that the firearm shall

3

not be considered a copy or duplicate of a firearm identified in clauses (d) and (e) if sold, owned and registered prior to July 20, 2016.

MASS. GEN. LAWS ch. 140, § 121("Assault-style firearm," clauses (a) through (e)).

10. "Large capacity device" is defined as:

(i) a fixed or detachable magazine, belt, drum, feed strip or similar device that has a capacity of, or that can be readily converted to accept, more than 10 rounds of ammunition or more than 5 shotgun shells; or (ii) any part or combination of parts from which a device can be assembled if those parts are in the possession or control of the same person; provided, however, that "large capacity feeding device" shall not include: (a) any device that has been permanently altered so that it cannot accommodate more than 10 rounds of ammunition or more than 5 shotgun shells; (b) an attached tubular device designed to accept and capable of operating only with .22 caliber rimfire ammunition; or (c) a tubular magazine that is contained in a lever-action firearm or on a pump shotgun.

MASS. GEN. LAWS ch. 140, § 121("Large capacity device").

11. The term "assault-style firearm" as used in the Statute is not a term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the passions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by tens of millions of law-abiding American citizens for lawful purposes. However, as this is the term used in the Statute, Plaintiffs will use it as well rather than belabor this Complaint with the more appropriate phrase "so-called assault-style firearm"

12. The Statute characterizes a detachable firearm magazine with a capacity greater than ten rounds as "large capacity" magazine. Again, this is a politically charged misnomer meant to stir the passions of the public against the law-abiding

citizens who possess literally hundreds of millions of such magazines, which are the standard capacity magazine for many lawfully owned firearms. However, as this is the term used in the Statute, Plaintiffs will use it as well rather than belabor this Complaint with the more appropriate phrase "so-called large capacity magazine."

## B.   The Banned Arms Are Protected by the Second Amendment

13. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (U.S. June 23, 2022); and *United States v. Rahimi*, 602 U.S. 680 (2024).

14. Justice Kavanaugh recently explained why semi-automatic rifles possessed by millions of law-abiding citizens such as those banned by the Statute are protected by the Second Amendment. See *Snope v. Brown*, 145 S. Ct. 1534 (2025) (Kavanaugh, J., statement respecting denial of certiorari). In *Heller*, the Court determined that the Second Amendment protects those weapons that are in "common use" by law-abiding citizens. *Id*. *Bruen* and *Rahimi* did not disturb the historically based "common use" test with respect to the possession of particular weapons. *Id.*, citing *Bruen*, 597 U.S. at 47. Americans today possess an estimated 20 to 30 million AR–15s, and AR–15s are legal in 41 of the 50 states, meaning that the states that prohibit AR–15s are something of an outlier. *Id.*, citing *Staples v. United States*, 511 U.S. 600, 612 (1994) (stating that AR–15s "traditionally have

been widely accepted as lawful possessions"). Given that millions of Americans own AR–15s and that a significant majority of the states allow possession of those rifles, there is a strong argument that AR–15s are in "common use" by law-abiding citizens and therefore are protected by the Second Amendment under *Heller*. *Id*.

15. Under the Supreme Court's Second Amendment precedents, it is analytically difficult to distinguish AR–15s from the handguns at issue in *Heller*. *Id*. Both AR–15s and most handguns are semi-automatic. *Id*. Law-abiding citizens use both for a variety of lawful purposes, including self-defense in the home. *Id*. Criminals use both in unlawful ways that threaten public safety. *Id*. But handguns can be more easily carried and concealed than rifles, and handguns— not rifles—are used in the vast majority of murders and other violent crimes that individuals commit with guns in America. *Id*. Thus, the Fourth Circuit's decision upholding Maryland's ban of AR-15s was "questionable." *Id*. Justice Kavanaugh closed with the following: "Additional petitions for certiorari will likely be before this Court shortly and, in my view, this Court should and presumably will address the AR–15 issue soon, in the next Term or two." *Id*. See also, *Id* at 1534 (Thomas, J., dissenting from denial of certiorari) ("It is difficult to see how Maryland's categorical prohibition on AR–15s passes muster under [*Bruen's*] framework.").

16. Firearm magazines are "Arms." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 116 (3d Cir. 2018), abrogated on other grounds by *Bruen*.

17.     The magazines the Commonwealth has banned are, like the semi-automatic rifles it has banned, unquestionably in common use by law-abiding citizens for lawful purposes. In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated on other grounds by Bruen*, Judge Traxler stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms.

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

18.     In summary, at least some of the "assault-style firearms" and "large capacity devices" banned by the Statute are protected by the Second Amendment.

19.     Plaintiffs recognize that the claims advanced in this Compliant may be foreclosed by the First Circuit's holding in *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024) and/or *Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2025). Plaintiffs advance the claims in this Complaint in an effort to preserve those claims for further appeal. *See McKnight v. Gen. Motors Corp.*, 511 U.S. 659, 659–60 (1994) (per curiam). Indeed, in his statement in *Snope*, Justice Kavanaugh contemplated that this case could possibly be one in which a petition for certiorari is granted in the next "Term or two."

C.      **Plaintiffs' Proposed Conduct**

20.     Plaintiffs Joseph R. Capen is a resident of the Commonwealth and is a law-abiding citizen of the United States. He is otherwise eligible under the laws of the

United States and the Commonwealth to receive and possess firearms and magazines, including the firearms and magazines banned by the Statute. Plaintiff intends to and, but for the credible threat of prosecution under the Statute, would purchase at least one of the firearms and magazines banned by the Statute to keep in his home for self defense and other lawful purposes. Specifically, but for the Statute, Capen would immediately purchase an AR-15 and a thirty-round magazine (which is the standard magazine sold with AR-15s).

21.     Plaintiff NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. Indeed, that is the purpose of its existence. NAGR has hundreds of thousands of members nationwide and hundreds of members who reside within the Commonwealth. For example, Mr. Capen, "E.H.," "F.D," "T.M.," "W.D," and "J.R." are members of NAGR, and but for the existence of the Statute, they would immediately acquire firearms and/or magazines banned by the Statute.

22.     NAGR represents the interests of its members who intend to and, but for the credible threat of prosecution under the Statute, would purchase the banned firearms and magazines to keep in their homes for self- defense and other lawful purposes. NAGR's members would have standing to sue in their own right. Neither the claims that NAGR asserts nor the relief it requests requires the participation of its individual members in this action.

**V. CLAIM FOR RELIEF**
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

23.     Paragraphs 1 through 22 are realleged and incorporated by reference.

24. The Statute bans firearms and firearm magazines that are typically possessed by law-abiding citizens for lawful purposes. The Statute, therefore, generally prohibits residents of the Commonwealth, including Plaintiff Capen and NAGR's members, from acquiring, keeping, possessing, and/or transferring arms protected by the Second Amendment. There are significant penalties for violations of the Statute.

25. These restrictions infringe on the right of the people of the Commonwealth, including Plaintiff Capen and NAGR's members, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states by the Fourteenth Amendment.

26. The Statute's prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

27. Defendants cannot satisfy their burden of justifying these restrictions on the Second Amendment right of the people to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## VI.  PRAYER FOR RELIEF

Plaintiffs pray that the Court:

28. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Statute, as applied to Capen, is unconstitutional;

29. Enter permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Statute provisions against Capen and NAGR's members;

30. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

31. Grant any such other and further relief as the Court may deem proper.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington*
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com
*Pro Hoc Vice*

Thomas M. Harvey
Law Office of Thomas M. Harvey
22 Mill Street
Suite 408
Arlington, MA 02476-4744
617-710-3616
Fax: 781-643-1126
Email: tharveyesq@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email counsel of record:

*/s/ Barry K. Arrington*
_____
Barry K. Arrington